UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CYNTHIA HEINSOHN | § | |
| v. | § | CIVIL ACTION NO. |
| | | SA-14-CV-00094-FB |
| CARABIN & SHAW, P.C. | § | |

## PLAINITFFS' MOTION FOR SUMMARY JUDGMENT REGARDING LIABILITY

Plaintiff, Cynthia Heinsohn, submits this her Motion for Summary Judgment Regarding Liability, and show as follows:

*Law*

1. Summary judgment shall be rendered if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ. Pro. A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrates the absence of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party opposing a motion must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). An adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial; if he does not so respond, summary judgment, if appropriate, shall be entered against him. Rule 56(e), Fed.R.Civ.Pro.

2. All of the evidence and inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The judge's function is not to weigh the evidence or determine

credibility. *Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2511. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (The Fifth Circuit exhibited a "clear misapprehension of summary judgment standards" when it credited the movant's witnesses while failing to properly acknowledge key evidence offered by the non-movant). Even looking at the evidence in the light most favorable to the Defendant, the employer lacks evidence of a genuine issue of material fact.

*Facts*

1. Cynthia Heinsohn started working for the Personal Injury law firm of Carabin and Shaw in April, 2011. Ex. 1, C.Heinsohn Depo, p. 33. She was asked to apply for the position by Tracey Leonard, the Human Resources person for Carabin and Shaw. Ms. Leonard interviewed the Plaintiff for the position. It was a brief interview, as Ms. Leonard told the Plaintiff the job was hers if she wanted it. *Id.* The Plaintiff had previously worked for a lawyer who shared office space with the firm. Mrs. Heinsohn was generally successful in her position. She worked in the Social Security department, processing Social Security claims. She was supervised by attorney George Escobedo. She started at $10 per hour and was paid $14 per hour when she left some 18 months later. Ex. 1, C. Heinsohn Depo, p. 34; Ex. 2, B. Rendon Depo, p. 53. Her other supervisor was Maria Carvajal, a more senior paralegal. Ex. 1, C. Heinsohn Depo, p. 38. Mrs. Heinsohn was trained by Maria Carvajal in how to process Social Security claims. Ex. 1, C. Heinsohn Depo, p. 42. Maria Carvajal trained Becky Rendon on how to use the case management software, NEEDLES. Ex. 2, B.Rendon Depo, p. 13.

2. In September, 2011, Cynthia Heinsohn tendered her resignation to Carabin and Shaw. But, James Shaw offered to match the pay of her new job, so she stayed at Carabin and Shaw. Ex. 1, C. Heinsohn Depo, p. 49-50. Mrs. Heinsohn married and became pregnant in 2012. She provided a medical note from her physician stating that she would need to be out for 6-8 weeks to recover from her birth. See Ex. 7, Discovery Documents, Note dated 9/21/2012. She started maternity leave on Monday, Oct. 8, 2012. Her last day was Friday, Oct. 5. Sometime before October, she was warned by Carabin and Shaw employees that her job may not be there for her when she returned from maternity leave. Ex. 1, C. Heinsohn

October, 2012 after Plaintiff left. Ex. 3, M. Carvajal Depo, p. 36-37. Ms. Carvajal had trouble testifying about these case notes. She needed some coaching from Carabin and Shaw's lawyer during her testimony about those case notes. See Ex. 3, M. Carvajal Depo, p. 31/ l. 20-23; p. 32/ l.23-24; p. 34/ l.20; p. 35. In any event, the case notes indicate two dates regarding when they were printed out: 2/6/2012 and 10/12/2012. See Ex. C to the Position Statement, upper left hand corner. Maria Carvajal eventually seemed sure that she did a file review in February, 2012 and Becky did a file review in October, 2012. So, it appears there was some sort of file review in February, 2012 and some sort of file print-out in October, 2012 when the Plaintiff left for maternity leave.

Carabin and Shaw mis-represented the situation regarding these cases notes in its 2013 Position Statement. Only seven pages were actually printed out by Ms. Rendon in October, 2012. Yet, the employer claims it found grievous errors in the October, 2012 file review, which required immediate termination. And, the employer claimed all 22 pages encompassed these serious errors. Mr. Shaw testified that he believed the problems found during the October, 2012 file review were serious enough that Cynthia Heinsohn should be fired immediately. Ex. 6, J. Shaw Depo, pp. 45-46. There was no need to call Mrs. Heinsohn into the office to ask her about the apparent problems. She should be fired now, said the law firm managing partner. Ex. 6, J. Shaw Depo, p. 46. The law firm should not send her flowers. Ex. 6, J. Shaw Depo, p. 42.

Mr. Shaw was explaining that he did not believe there was any point in asking Mrs. Heisnsohn for her version of events:

> Question: " . . but again, I have to say, why not bring her in or call her and ask her why not?
> Shaw: If an employee is hiding things and also not inputting new files and following basic – at what point – you have to – you have to terminate that employee."

Ex. 6, J. Shaw Depo, p. 41. In reality, Mr. Shaw was playing "gotcha" with this employee. He had a violation of procedure, he thought, and saw his opportunity to fire her.

Mr. Shaw says he looked at files brought to him by Maria Carvajal, Tracey Leonard or George Escobedo when he decided to fire the Plaintiff. Ex. 6, J. Shaw Depo, p. 40. He believes it was several files showing hidden documents, missed deadlines and files that had not been opened. Ex. 6, J. Shaw Depo, pp. 40-41. But, among the case notes cited by Mr. Shaw's representative before the EEOC, the hand written notes do not mention any hidden or missing documents. Three of the 10/12/2012 case notes indicate Mrs. Rendon filed the

appropriate appeal with no indication anything was amiss. See Ex. C to Plaintiff's Ex. 4, pages 26 of 39, 36 of 39, and 37 of 39. That leaves four of the seven cases with questions about how the case was handled. But, Mr. Shaw did not ask questions. He did not call Cynthia Heinsohn then on pregnancy leave, even though he asserts these were serious problems.

      But, Mr. Escobedo said Cynthia Heinsohn did not so much miss a deadline as she failed to tell him that a client had received a denial letter. The law firm was not copied on the denial letter, so it was likely the Social Security Administration would re-open the case. Ex. 5, G. Escobedo Depo, pp. 36-37. He added that in three to five cases, Cynthia did not miss the deadline, but she failed to to file the appeal before she left. Ex. 5, G. Escobedo Depo, p. 39. Later, the supervising attorney said there were actually four appeals Becky had to file that Cynthia supposedly did not adequately warn Becky about. Ex. 5, G,. Escodebo Depo, p. 62. But, in his 2013 statement attached to the EEOC position statement, he said there was "one or two" cases where Cynthia missed the appeal deadline. Ex. 4, Position Statement, Ex. D, Escobedo Statement. Cynthia Heinsohn's supervising attorney never did write down for Tracey Leonard or for James Shaw which cases the Plaintiff allegedly missed an appeal deadline (or not). Ex. 5, G. Escobedo Depo, p. 63. The supervising attorney did not believe Mrs. Heinsohn was untruthful. She just did not tell him about the case in which a client received a denial letter. Ex. 5, G. Escobedo Depo, p. 81. Yet, Mr. Shaw claimed he was certain Ms. Heinsohn had "hidden the ball" and that was unforgiveable. She had to be terminated now. Ex. 6, J. Shaw Depo.p. 46.

      Mrs. Rendon found in the case notes many appeals had not been filed timely, said the employer. Ex. D, Position Statement, p. 2. Plaintiff dismissed cases without approval and she allegedly hid documents. *Id.* But, only two of the seven 10/12/2012 pages of Ex. C indicate any deadlines were missed. And, nothing on those final seven pages indicates any documents were missing or were hidden. Those 10/12/2012 pages do indicate questions to be asked. But, no definitive conclusions were reached according to those case notes. Indeed, if Becky Rendon was so certain Cynthia had lied or mis-lead her employer, why would Mrs. Rendon continue a social relationship with Mrs. Heinsohn while the Plaintiff was out on maternity leave? The employer produced half a dozen text messages from Mrs. Rendon indicating a conversation between them on October 19, 2012 about the baby, Cynthia's health, about whether Becky needed help at work and about whether the Plaintiff had possibly been fired.

      In Defendant's motion for summary judgment, the Defendant now includes essentially all of these same issues but in varying degrees. Gone are the "one or two" missed deadlines. Now, the Plaintiff missed "at least" two appeal deadlines. Def's MSJ, p. 10. She

8

then sent "good cause" letters to the Social Security Administration without permission of her boss, George Escobedo. Good cause letters essentially allege that the deadline was missed for a good reason. The Defendant also adds that Plaintiff was "disciplined" twice for failing to keep NEEDLES up to date, for failing to work on her assigned cases for weeks at a time, and for not keeping proper contact with the SSA. Def's MSJ, p. 9. The Defendant is trying to squeeze all possible reason for her termination into its motion for summary judgment. Of course, none of these allegations appear in any contemporary written warning.

So, the purported problems with Cynthia Heinsohn as reported by the employer include:

| Pos'n Statement 4/3/2013 | Escobedo Depo 9/3/2014 | Shaw Depo 9/3/2014 | Case notes Printed 10/12/2012 | Def's MSJ |
|---|---|---|---|---|
| 1) appeals not timely filed 2) dismissed cases without approval 3) hid documents regarding important deadlines | Not telling Escobedo that a client received a denial letter from SSA | Hidden documents, missed deadlines and files were not opened | Three cases: appeal needed to be filed Two cases: 175 days past deadline | 1) Failed to update NEEDLES 2) Failed to work on cases 3) Not maintain proper contact with SSA 4) Missed "at least" two deadlines 5) Sent "good cause" letters without permission |

Mr. Shaw added a new transgression when he testified, that Mrs. Heinsohn did not open some files. Defendant's MSJ does not include this allegation. Mr. Shaw listed three transgressions in total. The supervising attorney had only one complaint about the Plaintiff's work. The case notes from 10/12/2012 list a lot of questions but only two apparent problems, two possible missed deadlines. Yet, Carabin and Shaw told the EEOC in April, 2013 that the Plaintiff had committed three major transgressions. One would expect memories to be more

9

accurate closer to the alleged infraction. But, these institutional memories all recall different alleged infractions and differing quantities of total infractions.

The employer cited 22 pages of case notes for its termination in its April, 2013 statement to the EEOC. Now, we know there were actually only seven pages of alleged problem case notes, which included six different cases. The employer based its termination on erroneous evidence. In reality, the employer added fifteen pages to bolster its claim that the Plaintiff was fired for performance issues. The employer has dissembled. The employer is still adding claims to bolster its case against the Plaintiff.

The falsity of the employer's explanation is sufficient grounds upon which a trier of fact may infer discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Once the employer's explanation has been eliminated, discrimination may well be the most likely explanation for the termination. *Id.*, 530 U.S. at 147.

3. The Plaintiff was not counseled about any alleged work performance issues.

The Position Statement claims Mrs. Heinsohn was counseled a second time by George Escobedo in February, 2012. Ex. 4, Position Statement, p. 3 (last paragraph); Ex. D to the Position Statement (statement by Maria Carvajal), p. 1, entry dated 2/2012. But, no document reflects any actual counseling. The closest paper trail to any written counseling is found in Ex. C to the Position Statement. The only paper trail is those case notes with hand written notes and questions. See Position Statement Excerpts, attached as Ex. 4 to this Motion. The case notes do not indicate any counseling actually took place. The Position Statement could only be based on Maria Carvajal's statement. Her statement is the only statement or record that claims any "counseling" occurred. Neither Becky Rendon or George Escobedo claimed there was any "counseling" in their statements for the EEOC. See Ex. D to Plaintiff's Ex. 4, Position Statement.

The employer persists in this exaggeration. In its amended answers to Interrogatories, it claims the Plaintiff was counseled in September, 2011 and again in February, 2012 for failing to enter status updates. See Ex. 8, Def's Response to Interrogatories, No. 7 (dated Nov. 24, 2014). Yet, Maria Carvajal was not involved in preparing this answer. James Shaw and Tracey Leonard helped prepare this answer. See Ex. 8, Def's Response to Interrogatories, No. 15. Despite having heard George Escobedo distance himself from any alleged counseling at his deposition on Sept.3, 2014, Mr. Shaw still insists on calling the discussions in September, 2011 and February, 2012 "counselings."

George Escobedo was confused about the written counseling process at Carabin and Shaw. He claims he worked for himself, not for Carabin and Shaw. He first claimed that any

10

written counseling would have to be conducted by Carabin and Shaw. That is, he said, he would not do any counseling. Ex. 5, G. Escobedo Depo, pp. 16-17. Yet, later when he reviewed the Position Statement which claims the Sept., 2011 meeting was a "counseling," he then changed his testimony. He then testified that yes, he counseled Cynthia Heinsohn in September, 2011 about her work performance. Ex. 5, G. Escobedo Depo, pp. 64-65. But, then he added that whether he did any counseling would depend on what Plaintiff's attorney meant by "counseling." Ex. 5, G. Escodebo Depo, p. 65. Still later, he clarified his answer again. And, Ms. Carvajal testified that in February, 2012, George Escobedo said he would talk to Cynthia Heinsohn about alleged deficiencies. Ex. 3, M. Carvajal Depo, p. 27. Ms. Carvajal interpreted that to mean he would "counsel" Mrs. Heinsohn. Ex. 3, M. Carvajal Depo, p. 28. To Ms. Carvajal, talking is the same as counseling. *Id.* Ms. Carvajal was not present, so she does not know what was said.

Eventually, Mr. Escobedo concluded that his role was to tell Tracey Leonard he was having a problem with an employee. It would be up to Ms. Leonard or James Shaw to decide what to do about performance problems. Ex. 5, G. Escobedo Depo, p. 66-67. His role stops at identifying problems with an employee. *Id.* He would not even use the word, "counseling." Ex. 5, G. Escobedo Depo, p. 67. Yet, if there were problems with Cynthia Heinsohn in February, 2012, he never told the law firm managing partner about it. Ex. 6, J. Shaw Depo, p. 57. Mr. Shaw agrees with Mr. Escobedo's last answer, that the firm should have counseled Cynthia Heinsohn regarding alleged performance issues, not George Escobedo. Ex. 6, J. Shaw Depo, pp. 57-58. If he believes that, then how can he sign a response to an interrogatory stating that Cynthia Heinsohn was "counseled" in September, 2011 and February, 2012 by George Escobedo?

So, the employer has described Plaintiff's supposed "counseling" as follows:

| Pos'n Statement 4/3/2013 | Carvajal Statement 3/11/2013 | Escobedo Depo 9/3/2014 | Carvajal Depo 8/25/2014 | Shaw Depo 9/3/2014 |
|---|---|---|---|---|
| Heinsohn was counseled in 9/2011 and 2/2012 for serious errors | 9/2011: Rendon and Heinsohn were told to update in NEEDLES regularly | 9/2011: it depends on the meaning of "counseling" Otherwise: counseling is done by C&S | 2/2012: that was a "talk" | Phone call to Heinsohn was not necessary. Mr. Shaw did not counsel the Plaintiff. |

11

|  | 2/2012: Heinsohn was counseled a second time |  |  |  |
|--|--|--|--|--|

Of course, prohibiting George Escobedo from counseling his employees suggests Mr. Escobedo was not Mrs. Heinsohn's real supervisor. Mr. Escobedo and Mr. Shaw both claim that George Escobedo had a practice separate from Carabin and Shaw. The evidence regarding that issue is ambiguous. But, whether Mr. Escobedo truly has a separate practice or not is not germane to whether anyone actually counseled the Plaintiff in 2013.

Mr. Escobedo's testimony regarding any supposed counseling of Mrs. Heinsohn is not consistent. He claims at first to do no counseling of Carabin and Shaw employees. Then, he says he did do something like counseling, depending on how the word is defined. Then, he reverts back to never doing any discipline of Carabin and Shaw employees.

Carabin and Shaw's Position Statement is admissible in a resulting legal action. The statement was a written explanation for the reasons and timing for the challenged employment decision. It was, therefore, a factual representation to an administrative tribunal. *Binder v. Long Island Lighting Company*, 933 F.2d 187, 194, n.3 (2d Cir. 1991); *Miller v. Raytheon*, 716 F.3d 138, 144 (5th Cir. 2013 (finding that inconsistent statements in the EEOC position statement helped show pretext on the part of the employer); *Brooks v. Grandma's House Day Care Centers, Inc.*, 227 F.Supp.2d 1041, 1044 (E.D. Wisc. 2002) (Employer's lawyer's letter to the EEOC was admissible as a statement of facts, since the letter helped show inconsistent reasons for the discharge). The employer cannot make a credible showing that Cynthia Heinsohn was ever counseled. The employer is prevaricating about 1) whether the Plaintiff deserved discipline and 2) regarding whether she did actually receive some discipline prior to her termination. The employer's proffered explanation is pretext. The only remaining explanation for the firing is her high risk pregnancy and extended maternity leave.

The employer did not go to the trouble of exerting some discipline at the time of these alleged infractions. Yet, it claims these issues were serious. As in the case of *Melendez-Arroyo v. Cutler-Hammer de P.R., Inc.*, 273 F.3d 30. 34 (1st Cir. 2001), there is almost no contemporary record of this alleged dissatisfaction with Mrs. Heinsohn's job performance. Almost all the criticism appear as new assessments, or, at best, claims made now as to what someone thought or heard at the time of the alleged mistake or omission by the employee "but never troubled to record." *Id. See, also, Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1312 (10th Cir. 2006) (No contemporary records regarding the employer's purported

12

reason for hiring and offering a higher pay to a male co-worker); *Reed v. Buckeye Fire Equipment*, 241 Fed.Appd'x 917, 927 (4th Cir. 2007) (question of fact existed whether plaintiff was meeting employer's legitimate expectations prior to termination given plaintiff's evidence that employer never provided notice to plaintiff that his performance was deficient, For seven years, plaintiff was given raises and bonuses and regularly given significant responsibility over important matters).

The timing of Plaintiff's termination suggests pretext. The employer fired her while she was still out on leave soon after it realized her maternity leave would be prolonged. Ms. Leonard's letter was dated Oct. 22 and it was effective Oct. 19. That was just days after Carabin and Shaw learned the Plaintiff would be out longer. Plaintiff and Mrs. Rendon had just spoken on Oct. 19 about whether she might be fired. Temporal timing will help show causation. Termination which occurs just two weeks after a complaint of harassment will help show causation for purposes of making out a *prima facie* case. See, e.g., Wallace v. *DTG Operations, Inc.*, 442 F.3d 1112, 1119 (8th Cir. 2006).

4. Evidence that the employer failed to follow its own internal procedures can serve as evidence of pretext.

Neither the law firm nor George Escobedo issued the Plaintiff any written warnings. The senior paralegal, Maria Carvajal, issued no written warnings. Yet, the law firm's internal procedures provide that written warnings will be issued for the first and second occurrences. See Ex. 7, Discovery Documents, Carabin and Shaw Employee Handbook. Failure to follow its own internal rules suggests pretext. *See Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2000) (evidence that the employer failed to follow its progressive discipline policies served as evidence of pretext). *See, also, Boehms v. Crowell*, 139 F.3d 452, 459 (5th Cir. 1998), *citing Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996) (Because of the many procedural irregularities in this case, a jury could reasonably infer that a discriminatory intent lead to this deviation from the rules); *Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1108 (11th Cir. 2001); *Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 396-97 (5th Cir. 2002) (an employer's conscious, unexplained departure from its usual policies and procedures regarding RIF's may support an inference of age discrimination). There are no written warnings in this case. The employer's explanation of its reason for the termination is so convoluted in part, because there were no written warnings.

13

*Conclusion*

Trial regarding liability is not necessary. The cases that formerly belonged to Plaintiff were transferred to her co-worker, Becky Rendon. Mrs. Rendon was not pregnant at that time. No evidence adduced at trial will change those facts. The employer need not send the Plaintiff flowers. But, it should have allowed her to explain any perceived issues.

WHEREFORE, Plaintiff prays that the Court grant her motion for summary judgment regarding liability, and for all relief, at law and in equity, to which she may be entitled.

Respectfully submitted,

14

_____
Thomas J. Crane
T.S.B. No. 05007320

LAW OFFICE OF THOMAS J. CRANE
110 Broadway, Suite 420
San Antonio, Texas 78205
(210) 736-1110
(210) 745-4258
tom@cranelawyer.net

Attorney for Plaintiff


### Certificate of Service

I certify that a true copy of the foregoing instrument was electronically filed on the \_\_18th\_\_ day of December, 2014 with the Clerk of Court using the CM/ECF system which will send notice of such filing to the following counsel:

Joshua H. Nieto
Brin & Brin, P.C.
6223 IH Ten West
San Antonio, Texas 78201


_____
Thomas J. Crane

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CYNTHIA HEINSOHN | § | |
| v. | § | CIVIL ACTION NO. SA-14-CV-00094-FB |
| CARABIN & SHAW, P.C. | § | |

### ORDER

On this came to be heard the Plaintiff's Motion for Summary Judgment. Having heard argument of counsel and reviewed the motion and attachments, including deposition excerpts and records, it appears that the motion has merit. It appears that there is no genuine issue of material facts regarding liability.

It is therefore:

ORDERED that the Plaintiff's motion be granted regarding liability under the Texas Commission on Human Rights Act.

**SIGNED AND ENTERED** this ___ day of _____, 2014.

_____
FRED BIERY
U.S. DISTRICT JUDGE